Reichenbach v Jacin Invs. Corp. (2025 NY Slip Op 02023)

Reichenbach v Jacin Invs. Corp.

2025 NY Slip Op 02023

Decided on April 03, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 03, 2025

Before: Manzanet-Daniels, J.P., Moulton, Gesmer, Pitt-Burke, Michael, JJ. 

Index No. 155013/19|Appeal No. 4043|Case No. 2023-06544|

[*1]Bill Reichenbach et al., Plaintiffs-Respondents-Appellants,
v
Jacin Investors Corp., et al., Defendants-Appellants-Respondents.

The Price Law Firm LLC, New York (Lilly D. Pollak of counsel), for appellants-respondents.
Sutton Sachs Meyer PLLC, New York (Zachary G. Meyer of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Lucy Billings, J.) entered September 25, 2023, which, inter alia, granted in part and denied in part the motion of plaintiffs-tenants for summary judgment on the tenants' claims for declaratory relief declaring their apartments 4C and 5J to be rent stabilized and for rent overcharge damages for all four tenants, unanimously modified, on the law, to grant summary judgment to plaintiff Amy Kerner on the first claim for a declaratory judgment declaring that apartment 4C is subject to rent stabilization and Kerner is entitled to a rent-stabilized lease, to direct defendants-owners to provide her with a proper rent-stabilized lease, and to find that her apartment 4C was included in the building-wide fraudulent scheme to remove apartments from rent stabilization, and otherwise affirmed, without costs.
We modify the order under the newly-enacted amendments to the Rent Stabilization Law (RSL) and Code (RSC) relating to establishing fraud in the context of the rent regulatory scheme, which apply to all claims pending as of December 22, 2023, including the claims here (L 2023, ch 760; L 2024, ch 95; Gomes v Vermyck, LLC, AD3d-, 2025 NY Slip Op 00849 [2d Dept 2025]). As relevant here, the amendments direct the courts to return to the fraud analysis in Thornton v Baron (5 NY3d 175 [2005]) and Matter of Grimm v State Div. of Hous. and Community Renewal Off. of Rent Admin. (15 NY3d 358 [2010]) in implementing "the intent of the legislature to discourage and penalize fraud against the rent regulatory system itself, as well as against individual tenants" (L 2023, ch 760, part B, § 1). The amendments also permit us to consider "records of any age or type, going back to any date that may be relevant" to establish whether an apartment was properly deregulated (L 2024, ch 95, § 2). For these reasons, we modify the order appealed to grant summary judgment to plaintiff Amy Kerner on her first claim and declare that apartment 4C is subject to rent stabilization and Kerner is entitled to a proper rent-stabilized lease, which the owners are directed to provide, and to find that her apartment was also subject to the owners' fraudulent scheme to deregulate apartments in the building.
With respect to apartment 4C, it is well settled that "a tenant should be able to challenge the deregulated status of an apartment at any time during the tenancy" (Gersten v 56 7th Ave. LLC, 88 AD3d 189, 199 [1st Dept 2011], appeal withdrawn, 18 NY3d 954 [2012]). The motion court erred to the extent that it conflated this analysis with the review of the rent history for the purposes of establishing fraud under the law applied to an action such as this one commenced before the enactment of the Housing Stability and Tenant Protection Act of 2019 ([HSTPA] L 2019, ch 36).
Here, the rental history for apartment 4C listed rent stabilized rents prior to Kerner's occupancy that exceeded applicable lawful increases without listing any reason justifying the [*2]excessive rent increases in those years. Kerner took occupancy of apartment 4C on May 1, 2005. Yet, the July 15, 2005 DHCR registration lists apartment 4C as vacant. In addition, the 2006 DHCR registration lists the apartment as subject to "high rent vacancy" due to "MCI" (major capital improvement). However, Kerner swore in her affidavit that no work had been performed in the building during her tenancy. Tenants' counsel further demonstrated that, but for the unexplained rent increases preceding and at the commencement of Kerner's tenancy, Apartment 4C would not have been subject to deregulation when she moved in. Thus, tenants established a prima facie case that apartment 4C is rent stabilized. Since the owners failed to submit any evidence to the contrary, the motion court should have granted the tenants' motion on the first claim for declaratory and injunctive relief for a declaration that apartment 4C is rent-stabilized and to direct the owners to provide Kerner with a rent-stabilized lease.
We reject the owners' argument that they were not subject to a preclusion order. The January 19, 2022 order (Lewis J. Lubell, J.) states that as a result of the owners' failure to produce the records demanded by the tenants in discovery, "the Court finds the less severe sanction of preclusion to be appropriate." Contrary to the owners' claim, nothing suggests that the court did not consider their opposition papers. Rather, the court properly determined that because of their failure to produce relevant documents in discovery, they were unable to rebut the tenants' assertion with documentary evidence. In any event, as a substantive matter, the owners fail to identify what, if any, evidence produced in discovery would have raised a question of fact requiring trial.
With respect to apartment 5J, the motion court properly determined that the February 2, 2015 Civil Court stipulation under which plaintiff Erika Abrams settled a nonpayment proceeding brought by the owner, in which they purported to agree that the apartment was not subject to rent stabilization, was void (Gersten v 56 7th Ave. LLC, 88 AD3d at 199). Under 9 NYCRR 2520.13, agreements to waive the RSL and RSC are void, but "a tenant may withdraw, with prejudice, any complaint pending" by negotiated settlement where the tenant is represented by counsel. Thus, although the withdrawal of her claims in the nonpayment proceeding was permissible, the waiver of the protections of the RSL and RSC was not.
This Court's January 5, 2021 order left open the question of whether the owners could establish in discovery that the stipulation was enforceable (see Reichenbach v Jacin Invs. Corp., N.V., 190 AD3d 437, 438 [1st Dept 2021]). The owners failed to do so here. In addition, a review of the rent history shows that the apartment purportedly was deregulated in 2010, immediately prior to Abrams's occupancy, despite registrations of $1,339.03 per month in 2008, $0.00 in 2009, and no explanation for the purported[*3]"HIGH RENT/HIGH INCOME" exemption in 2010. The motion court properly construed this as indicia of fraud under pre-HSTPA law, warranting summary judgment in Abrams's favor on her claim for declaratory and injunctive relief.
The court granted the second and fourth claims for a determination of the legal regulated rents for the rent-stabilized apartments but denied the motion to the extent it sought the calculation of the specific rents and damages. The owners object to the motion court's finding that the default formula applied to apartments 2J, 3D, and 5J. We disagree, as under both pre-HSTPA law and the new "totality of the circumstances" test under the amendments, these tenants met their prima facie burden on the indicia of fraud. We also find that in the totality of the circumstances, Kerner established that 4C was included in the fraudulent scheme to deregulate the apartments, and her base date rent should be calculated under the default formula as well (9 NYCRR 2522.6[b][2], [3]).
In determining that a fraudulent rent permitted a review of the rent history beyond the four-year lookback period, the Court of Appeals in Thornton (5 NY3d 175) reasoned that the purpose of the strict lookback period "was to alleviate the burden on honest landlords to retain rent records indefinitely, not to immunize dishonest ones from compliance with the law" (id. at 181 [internal citation omitted]). In Matter of Grimm (15 NY3d 358), the Court of Appeals determined that Thornton "applies in a situation where it is alleged that the standard base date rent is tainted by fraudulent conduct on the part of a landlord" (id. at 362). The new amendments direct courts to return to this line of cases in order to determine whether "a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit" exists in the "totality of the circumstances, . . . provided that there need not be a finding that all of the elements of common law fraud" were established in making the determination (L 2024, ch 95, § 2-a).
Thus, we find that the tenants established a colorable fraudulent scheme to deregulate apartments 2J, 3D, 4C, and 5J based on the evidence in the record. The rent increases in the DHCR rent history for each apartment were haphazard, unsupported, and would have required numerous instances of IAI and MCI work while these tenants were in occupancy to reach the rents registered. Because the tenants swore in their affidavits that no work had been performed in the building or in their apartments to justify those increases during their tenancies, the record provided ample basis for the court to find a fraudulent scheme to deregulate apartments throughout the building, and the owners failed to rebut this showing. That apartments 2J and 3D had not yet reached the high-rent vacancy deregulation threshold before the law changed does not overcome the fraudulent nature of the scheme (435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC, 183 AD3d 509, 510-511 [1st [*4]Dept 2020] ["In the event it is proven that defendant engaged in a fraudulent rent overcharge scheme to raise the pre-stabilization rent of each apartment, tainting the reliability of the rent on the base date, then the lawful rent on the base date for each apartment must be determined by using the default formula devised by DHCR"]). Contrary to the owners' contention, the tenants specifically pleaded the fraudulent scheme in the complaint, the record supports the motion court's conclusion that the tenants were intentionally overcharged, which rendered their base date rents unreliable (9 NYCRR 2522.6[b][2], [3]), and the owners failed to raise a question of fact necessitating a trial on whether the default formula applies here.
We have considered the remaining contentions and reject them.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 3, 2025